Robertson, Ch. J.
The statute of frauds requires a written note or memorandum of every contract for the sale of goods, chattels, and choses in action, to be signed by the “parties to be charged therewith,” in order to make it binding, unless some *344 of the articles sold have been delivered, or the price of them paid. (2 R. S. 136, § 3.) Of course at common law, in order to make such contract binding, it is necessary that a consideration, executed or executory, should move from each party to make that of the other binding. If the agreement of the vendor to sell and of the vendee to buy, constitute mutual considerations for each other, both parties 'must be bound by such contract to make it obligatory on either; consequently the statute has required such contract to be signed by the buyer as well as the seller, in order to make the former chargeable therewith. Unless, therefore, such statute meant to go farther than merely to require a written contract to be signed by both parties as a mode of obligation, in the alternative, with a delivery and acceptance of part of the goods or a payment and receipt of part of the price (which equally required an act to be done by both parties) and actually to abolish the rule of the common law as to the necessity of a consideration, no such contract could be binding under it unless signed by both parties.
It is to be noticed that in the same statute the section respecting agreements to last over a year in their performance, and to pay the debts of third persons, or in consideration of marriage, employs the same language as the clause already alluded to, which requires the contract to be signed by the parties, (2 R. S. 135, § 2,) immediately after requiring interests, trusts and estates in land or powers over it to be granted, created, assigned or surrendered by a conveyance in writing, subscribed merely by the party creating, granting, assigning or surrendering the same alone,. or his agent duly appointed, in writing. (2 R. S. 134, § 6.) Such statute also required a lease of land for over one year, and any agreement for the sale of any interest therein, which it prescribed should be made in writing, to be signed merely by the party by whom the lease or sale v)as to be made, (2 R. S. 135, § 8,) without regard to the lessee or vendee. Consequently, courts of equity early took the ground that specific performance of agreements in relation to land could be enforced when signed by the vendor only, (Halton v. Gray, Eg. Cas. Abr. pl. 10 ;) and that doc *345 trine, after-some hesitation and struggle, as may be seen by the cases examined by Chancellor Kent in Clason v. Bailey, (14 John. 484,) was finally adhered to in this state. But in England even the cases of Egerton v. Matthews, (6 East, 307,) and Saunderson v. Jackson, (2 Bos. & Pul. 238,) erroneously cited in Russell v. Nicoll, (3 Wend, 113,) as referring to contracts for sales of goods, which sustained such view, have been questioned, and Lord Kenyon, in Charles v. Beckett, (7 Term Rep. 17,) alone, and in Cooper v. Elston, reported in the same volume, (p. 17,) jointly with Baron Grose, deplored such departure from the strict letter of the statute. In fact, however, such doctrine in the court of equity is justified only by assuming that the statute does not affect the liability of a vendee or lessee, who may bind himself orally, in consideration of the written agreement of the vendor or lessor, and thus make the contract binding on both parties without affecting the rule of law as to a nudum pactum. Without such mutuality Lord Redes dale declared in Laurenson v. Butler, (1 Sch. & L. 201,) that the statute would have been one of and not against fraud, and remarked that there was no late case in which equity had decreed performance where one party only was bound. An oral promise to pay for lands conveyed may be enforced, (Thomas v. Dickinson, 12 N. Y. Rep. 364; Murray v. Smith, 1 Duer, 412;) and there is no reason why one to pay for lands merely agreed to be conveyed in consideration of such agreement should not be so, equally. The statute in regard to contracts or conveyances affecting lands does not, in tepns, render void the promise of the purchaser or grantee to pay, unless written and signed by him, as it does the promise of the purchaser of goods, unless accompanied by part execution. It is true that a different reason was discovered by Paige, J. in Worrall v. Munn, (1 Selden, 246,) for enforcing contracts for the sale of lands, which he ventured to declare could be done, even where there was was no mutuality. That was, that the party to be charged was estopped by his signature from denying the contract to be validly executed, although not signed by the other, which after all only comes back to the same point *346 that the statute requires it in the case of the seller, and makes that sufficient, without touching the obligation of the purchaser. The reasoning in Fenly v. Stewart, in this court, (5 Sandf. 101,) notwithstanding its artificiality, I do not understand as impugning that principle, hut merely as insisting that the party to he charged must sign, without adverting to any ground as that on which equity has enforced such contracts. There is another reason why different language should be used in regard to contracts or conveyances affecting lands and those in regard to goods. The former was always a favorite with the common law, and required peculiar protection ; whereas the latter was of less account, and merely required that both parties negotiating for a sale should have been established by incontrovertible evidence to have been in earnest and positive in making the bargain conclusively.
The principle in regard to contracts for the sale of goods has never been fully settled in this state, although sometimes assumed or stated to have been so, in obiter dicta. In the early case of Roget v. Merritt, (2 Caines, 117,) the court expressly avoided deciding the case upon the construction of this statute, and even Spencer, J. only held the defendant not to be bound because the consideration agreed (orally) by the plaintiff to be given failed, although he stated that, he thought it enough that the party who had to perform the principal part of the contract,” i. e. to deliver the goods, should sign it and the other accept it. I apprehend the payment of the price is as important a part of the whole contract as the delivery of the goods; indeed the statute expressly makes it so. The mere receipt of the written paper could impose no obligation on the recipient. In the case of Bailey v. Ogden, (3 John. 399,) the question was still kept open, Chancellor Kent declaring that the obligation of the plaintiff who alone had signed the agreement, was not a question in it. In Merritt v. Clason, (12 John. 102,) the agreement had been signed by a broker, and both counsel put the case upon the question whether he could bind both, and Justice Platt, in delivering the opinion of the court, held he could bind the defendant, and *347 upon that ground alone the decision in that case was sustained in the Court of Errors. (S. C. sub. title Clason v. Bailey, 14 John. 484.) Even Chancellor Kent, who examined in such court of last resort the question and reviewed all the cases, including many which were confined to sales of land, and leaned towards the validity of the contract in favor of the non-signing party, expressly disclaimed “placing the cause on that ground.” In Russell v. Nicoll, (3 Wend. 112,) no objection had been taken on the trial to the validity of the contract, a nonsuit was granted on other grounds affecting the. merits ; one of which was that it was on a contingency which had not happened ; and such decision was sustained by the Supreme Court on the same grounds. It was in that case, as I have already noticed, that the English cases (Egerton v. Matthews, and Saunderson v. Jackson, ubi sup.) cited by the learned judge (Marcy) for his merely incidental remark that the signature of the defendants to the contract was a sufficient compliance with the statute, related to land alone. The late case of Dykers v. Townsend, (24 N. Y. Rep. 57,) is as strong an authority on the other side, as any just given, in regard to the obligation of a contract on a vendor when not signed by him. The learned judge who gave the opinion in that case says : “ As an original question I should have no hesitation in saying in a case where a. contract was entirely executory on both sides and no part of the consideration had been paid, that it was necessary it should be in writing under this statute, and be signed by both parties thereto in order to be binding on either.” It appears to me to be most decidedly a question not yet disposed of by authority, but studiously avoided.
The change of language in the statute from the party by whom an interest in, or lease or sale of lands, is to be made, and the party who is to be charged with the agreement mentioned in the immediately preceding section in the singular, to the parties to be charged, in the plural, in the provision under consideration, is most striking and conclusive. That second section of the statute expressly requires a consideration to be expressed in the agreements therein referred to, (2 R. S. 135,) *348 although a similar requisite was held to he necessary, even without such express requirement. (Sears v. Brink, 3 John. 210.) The provision under consideration does not contain the same requirement, because in a contract of sale the terms, including the price, must be mentioned, and the signature of the purchaser shows the consideration by the instrument itself. If the principle is to prevail as to the purchaser, it must do so equally as to the vendor ; nor will it do to say, as in Roget v. Miller, (ubi supra,) that the delivery of the goods is of more importance than paying their price. And then a mere offer, which is all that an agreement or proposal on one side to buy is, might be converted afterwards by mere parol testimony of its acceptance, into a contract. There is certainly as much danger of perjury in proving by parol, such acceptance as the whole contract. I am satisfied, therefore, that the express terms of the provision under consideration, as well as the purpose of the statute, require that the terms of a contract of sale, after being fixed, should be reduced to writing, and signed by both parties, in order to prevent both misapprehension and perjury.
The judgment and order denying a new trial must, therefore, be affirmed, with costs.
Barbour, J. concurred.