By the Court,

Savage, Ch. J.
The question is, which of these parties shall sustain the loss which has happened in this case. Both were equally ignorant of the failure of the Franklin Bank, when the note was passed. Upon principles of justice and honesty, it would seem that whoever parts with that which is valuable, should receive value for it; and he who receives value should give value in return. When a bank fails, its notes are of no value, or nearly so, and the loss should fall upon those in whose hands the notes are when the failure happens. Any other doctrine, I apprehend, would lead to innumerable and atrocious frauds. Were the knowledge of the party the criterion by which to determine the liability of a person passing notes of a broken bank, those in possession of such paper might be induced to pass it to others who were ignorant of the failure of the bank. And it is well known how difficult it might be to show the knowledge necessary to charge such person.
*This precise question does not appear to have received a judicial determination in this court, though cases somewhat analogous have been decided. A distinction has been taken between a note taken for a precedent debt, and one taken in payment for goods sold at the time. In Herring v. Sanger, 3 Johns. Cas. 71, a note was taken from a member of a firm, upon a settlement of a partnership account. Kent, justice, said it was well settled that accepting a note for a debt due is no payment of the debt, unless it be so specially agreed, or unless the creditor negotiates the note ; it can only postpone the payment until a default in the payment of the note. 2 Johns. Cas. 441. 1 Esp. 8. In Tobey v. Barber, 5 Johns. Rep. 72, the same doctrine was reiterated, and many cases referred to. The rule is laid down that the taking a note, either of the debtor or a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take it as payment, and run the risk of its being paid ; or unless the creditor parts with the note, or is guilty of laches, in not presenting it for payment in due time.
I am not aware that this rule has at all been departed from when a note has been taken in payment of an antecedent debt. When a note has been taken in payment for goods sold, the cases seem to have turned upon what appeared to have been the agreement or understanding of the parties at the time. The rule of Lord Holt seems to have been, that taking a note for goods sold is payment, because it was part of the original contract; but paper is no payment *17 where there is a precedent debt; for when such note is given in payment, it is always intended to be taken under this condition, to be payment if the money be paid thereon in convenient time. I apprehend there has generally been some circumstance in each case by which the court and jury could ascertain what was the agreement between the parties as to who should run the risk of the solvency of the note transferred in payment of goods. In Roget v. Merritt & Clapp, 2 Caines, 117, the action was on an agreement to sell a quantity of flour for the note of one Lyon. When the flour was demanded and the note tendered, Lyon had failed. Spencer, justice, who delivered the opinion of the court, held that the consideration for the promise to deliver the flour *had failed by the insolvency of Lyon, and refers to the cases of Owenson v. Morse, 7 T. R. 64, and Puckford v. Maxwell, 6 id. 52, to sustain the proposition, that upon an agreement to accept notes in payment of articles, if, before the delivery of the articles, the notes prove bad, the party is not bound to deliver the goods, unless by the contract he was to run the risk of their being paid. These cases assume that notes thus given in payment are of value, and so understood to be when delivered inpayment.
The case of Markle v. Hatfield, 2 Johns. R. 455, arose upon the payment of a forged bank note, upon a purchase of cattle ; and it was held no payment. Kent, chief justice, begins his opinion by saying, “ The justice of this case is clearly with the defendant in error. He parted with his goods to the plaintiff without receiving the compensation which was intended.” And such is the case of every sale where the note is taken in payment, and no express agreement is made as to the risk of collection. Had the note in the case of Markle v. Hatfield been genuine, but the bank insolvent, the remark of the learned judge would have been equally just. The owner of the cattle in that case had parted with his property, and had received waste paper; and it would be equally waste if the bank was insolvent as when forged. The learned judge refers to several cases ; he cites with approbation the case of Stedman v. Gooch, 1 Esp. 3, in which notes were taken for goods sold and received in payment, but proved to be of no value, and the king’s bench held that they might be treated as waste paper, and a suit sustained for the original demand. Johnson v. Weed, 9 Johns. R. 310, was an action for goods sold, and it was alleged that payment was made in a note of a third person. The judge charged the jury that unless the plaintiff agreed to receive the note as payment, and run the risk of collecting it, the mere taking the note would not amount to payment. The plaintiff recovered, and the court refused to grant anew trial. The judge who delivered he opinion of the court said that there must be a clear and special agreement that the vendor shall take the paper absolutely as payment, or it will be no payment, if it turns out to be of no value. In that case there *was evidence from which the jury might infer that the note was not taken at the plaintiff’s risk.
The case of Whitbeck v. Van Ness, 11 Johns. Rep. 409, was for the sale of an horse for the note of a third person ; and nothing was said at the time of delivery as to the solvency of the maker of the note, or at whose risk the note was to be taken. The judge charged the jury that the plaintiff was entitled to recover, unless he had expressly agreed to take the note at his own risk. The plaintiff recovered, and the court granted a new trial. Spencer, justice, in delivering the opinion of the court, states the question to be whether the note of a third person, agreed to be taken in payment for goods sold at the time, is taken at the risk of the vendor or vendee. He says that the case of Johnson v. Weed was rightly decided, because it was clear, from the testimony, that the plaintiff did not intend to take the note at his own risk; but in the case then *19 before him he says, nothing can be more manifest than that both parties understood that the plaintiff should take the nóte at his own hazard. He denies the doctrine advanced in Johnson v. Weed, and goes into an examination of the English cases, sustaining the doctrine of Lord Holt, who held that if A. sells goods to B., and B. gives a bill in satisfaction, B. is discharged, though the bill is never paid. The learned judge, however, concludes his opinion by stating that the intrinsic circumstances of the case plainly show that the plaintiff considered himself as taking the note at his own risk.
All the cases which I have seen are decided upon what was assumed to be the understanding of the parties at the time when the note or bill was delivered in payment for goods. See also 2 Stark. Ev. 306, and 3 id. 1089, n. But no case has been referred to where such note or bill has been considered pajment when delivered upon an antecedent debt. In this case the note in question was paid upon an antecedent indebtedness, to wit, the money which was deposited with the defendants. It has been supposed that if the law be, as stated, in relation to promissory notes, yet as bank notes partake of the nature of money, they are therefore upon a different footing. Although bank notes supply the place of coin, in affording *a circulating medium, yet they are promissory notes, and in most respects the rules relating to promissory notes, are applicable to them. Even if considered for the purpose of the argument as coin, it is very questionable whether any different rule should be applied. I can see no reason why, upon principle, such payment is to be considered valid, so long as the party paying in counterfeit coin parts with no value, and the party receiving gets nothing in return for his property. In the case of the payment of a counterfeit or forged bill, it is settled that the debtor is not discharged, and it is not perceived why the same principle should not prevail where the payment is made in the bill of a bank which has stopped payment. In each case the debtor parts with that which has no value, and the creditor does not receive value for his debt. The plaintiff is entitled to judgment.
Judgment for plaintiff.