Griffith *v.* Grogan.

GRIFFITH *v.* GROGAN *et al.*     .

Defendants were indebted to plaintiff in the sum of $10,000; subsequently parties had a settlement, and defendants gave to plaintiff, in part payment of the debt, a note of third parties, for $2,500, which was received by plaintiff without objection, and the same left with defendants for collection. The note was not paid at maturity, and plaintiff demanded the amount for which the note was taken in settlement, of the defendants, who paid $1,250, and gave to plaintiff another note of same parties for the balance, payable in one year: *Held,* In an action by plaintiff against the defendants to recover the balance, that defendants are liable for the amount.

Unless the note was received by express agreement as payment, it did not extinguish the debt. It only operated to extend the time of payment of the debt, to the time the note fell due, and hence the Statute of Limitations would commence running only from that time.

The acceptance of a note of a third party, by the creditor, is considered as accompanied with the condition that the note shall be paid at its maturity.

The obligation of the debtor to pay in such case, does not rest upon notice by the creditor of the non-payment of the note, but upon the fact that the note was not paid; and hence, delay on the part of the creditor in calling on the debtor, will not absolve him from his obligation to pay.

A part payment of a demand, of one of two debtors, will not discharge such debtor making the payment, from the payment of the balance. His obligation is to pay the whole.

APPEAL from the Twelfth District, County of San Francisco.

This was an action to recover a sum of money.

In March, 1853, the plaintiff, Griffith, loaned to the defendants, Grogan & Lent, $10,000, for which they were to pay the plaintiff three per cent. per month.

In December, 1854, the defendants rendered their account to the plaintiff, and a settlement of the balance due was made. In such account the plaintiff is charged with a note of Hale & Vincent, for $2,500. This note was received without objection by the plaintiff, and was then left by him with the defendants for collection. Upon its maturity, the note was not paid, and the plaintiff, after some months' delay, called upon the defendants for the amount for which it was taken in the settlement. The defendant, Lent, then advanced $1,250 of the amount in cash; and a new note of Hale & Vincent for the balance, payable in one year, was given to plaintiff. This arrangement

Griffith *v.* Grogan.

was made in October, 1855, under the supervision of Lent, who appears to have acted upon the impression that his own·liability would be discharged by the payment of one-half, his copartnership with Grogan being at that time dissolved. The new note not being paid, the present action was brought to recover the balance remaining due upon the account rendered upon the settlement, the subsequent payment by Lent being credited thereon. On the trial, the plaintiff produced the new note of Hale & Vincent, and offered to deliver the same up to the defendants.

The cause was tried by a jury in the Court below, who returned a verdict for the plaintiff for $1,717.77, and judgment was entered thereon. Defendants appealed to this Court.

*Whitcomb, Pringle & Felton* for Appellants.

I. It will be seen that there is a clear distinction between the case at bar and the case where the note or bill of a third person is given for a pre-existing debt. In the case at bar, after the first settlement the defendants were not indebted to the plaintiff at all; allowing that the first settlement was fraudulent, still it was only voidable, not void, and until actually avoided by the plaintiff by the surrender of the note which he received on the settlement, it was an extinguishment of all claims of the plaintiff against the defendants. The plaintiff had simply a right to avoid; this right he has never exercised. He voluntarily, and with full knowledge of all the facts, canceled the note he received in settlement, thereby putting it out of his power to rescind this contract, and received therefor one-half money and one-half in a new note of Hale & Vincent, made payable in a year.

II. The second point which we make is this: That the plaintiff should have alleged and proved a notice to defendants, that the second note was not paid, and have demanded the payment of the money before bringing suit.

Admitting that defendants could become liable to plaintiff at all, it would only be in case the second note of Hale & Vincent was not made. Now, whether this note was or was not paid, was a fact of which plaintiff alone could have notice, and the defendants could not know, until apprised by plaintiff, that the condition on which they were

to be liable, had happened.    It is a familiar principle, that notice and demand are necessary before bringing suit, where the liability depends on a condition, the happening or non-happening of which is peculiarly within the knowledge of the person in favor of whom the liability is to accrue.    Now, in this case, on the hypothesis that the plaintiff received this second note in conditional payment, he bound himself to use reasonable diligence to collect it.    He was bound to notify the defendants that this condition—that of nonpayment—on which their liability depended, and the happening of which he alone knew had really happened, and that they were liable.    He had no right, either as a matter of law or common sense, to commence a suit on a liability of the existence of which defendants were kept in ignorance by himself. Dayton v. Trull, 23 Wend. 345.

*Sidney V. Smith* for Respondent.

I. That the taking of a note of a third person for a pre-existing debt, is not payment or satisfaction, except it be so expressly agreed; it is merely an extension of the time of payment of the original debt.

Upon this point the doctrine is well settled; the cases are all reviewed in 2nd American Leading Cases, (pp. 162–196) the leading case there cited being Tobey v. Barber (5 Johns. 98) ; and the correctness of the doctrine is recognized by this Court in Brewster v. Bours, 5 Cal. 501.

II. Whether it was the intention of the parties that the note was given and taken in full discharge, or not, was a question for the jury. 2d Am. Lead. Cases, 180.

III. This Court, in Armstrong v. Hayward, (6 Cal. 183) decided that a release to one joint debtor, to avail either him or his co-debtor, must be a technical release under seal ; and no such release is pretended in this case.

But the appellants say there was no pre-existing debt, and that therefore this case is clearly distinguished from the class of cases to which respondent has referred ; and they give as their reason for it, that Griffith never rescinded the transactions of December, 1854, because, with a full knowledge of all the facts, he accepted the $2,500 note, and delivered it up to Hale at the time of the settlement in Octo-

Griffith *v.* Grogan.

ber, 1855; and in proof of this, they refer to Hale's evidence. They therefore contend that there was an entire waiver of the fraud of December, 1854, and they asked the Court so to instruct the jury.

The Court below properly refused the instruction as asked for, because it is well settled that while the party defrauded may, by accepting that which was the subject of the fraud, lose the right to rescind, yet without more, he does not, by that act alone, lose his right to recover for the fraud. Allaire *v.* Whitney, 1 Hill, 484; Whitney *v.* Allaire, 4 Denio, 554.

IV. It was not necessary that notice of nonpayment should have been given to Grogan & Lent.

In Dayton *v.* Trull, (23 Wend. 345) cited by appellants, the case was not that of a note of a third person, but it was a bill of exchange drawn by the original debtor on a third person, which bill was not produced, nor was it shown to have been presented for payment.

The authors of American Leading Cases, (vol. 2, page 183) refer to the law merchant as controlling this class of paper, and say that it is the duty of the holder of such paper to make it available for the purpose for which it is given, and that therefore a plea that the plaintiff has taken the note of a third person, on account of the cause of action, is sufficient to create a bar to the suit, which can only be removed by showing that the ordinary course of business had been pursued with reference to the security thus taken, and that it has notwithstanding proved inadequate as a means of payment.

Dayton *v.* Trull was decided in accordance with the law merchant, which requires that the maker of a bill of exchange shall be notified of the presentment and nonpayment.

In the case before the Court, the note for $1,500 was duly presented to Hale & Vincent for payment, and payment refused. Inasmuch as the note was not indorsed by Grogan & Lent, nor were they parties to it, it was not necessary, under the law merchant, to give notice to them.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., and BALDWIN, J., concurring.

The money placed in the hands of the defendants, in March, 1853,

Griffith *v.* Grogan.

cannot, in strictness, be termed a deposit. The defendants were to have the use of the money, and to allow interest upon it, although the plaintiff was at liberty to withdraw such portion of the same as he chose, at any time. It was, in fact, a loan payable in whole or in part, on demand. In what manner, therefore, the defendants used the money, it is of no consequence to inquire. It was to them, and not to any investments of the money, the plaintiff was to look for repayment.

In December, 1854, the defendants rendered their account to the plaintiff, and a settlement of the balance due was made. In such account the plaintiff is charged with a note of Hale & Vincent for $2,500. This note was received, as it would appear, without objection by the plaintiff, and was then left by him with the defendants for collection. Upon its maturity, the note was not paid, and the plaintiff, after some months' delay, called upon the defendants for the amount for which it was taken in the settlement. The defendant, Lent, then advanced $1,250 of the amount in cash, and a new note of Hale & Vincent for the balance, payable in one year, was given to the plaintiff. This arrangement was made in October, 1855, under the supervision of Lent, who appears to have acted under the impression that his own liability would be discharged by the payment of one-half, his copartnership with Grogan being at that time dissolved. The new note not being paid, the present action was brought to recover the balance remaining due upon the account rendered upon the settlement, the subsequent payment by Lent being credited thereon. On the trial, plaintiff produced the new note of Hale & Vincent, and offered to deliver the same up to the defendants.

The only questions material for the determination of the case, relate the effect upon the claim of the plaintiff of taking the note of Hale & Vincent in the settlement of December, 1854, the effect of the renewal of the note, and the application of the Statute of Limitations to the demand.

The consideration of the note of $2,500 is of no moment. Whether given for a loan of a part of the money received from the plaintiff, or upon a sale of flour, is immaterial. The only point for consideration relates to the intention, or rather the agreement, with which it was received by the plaintiff. Unless received by express agreement as

Griffith *v.* Grogan.

payment, it did not extinguish the debt.   It only operated to extend until its maturity, the period for the payment of the debt.   This is the settled doctrine as to the notes of the debtor, or of third persons, taken for an antecedent debt.   Their acceptance is considered as accompanied with the condition of their payment at maturity.   Thus it was said, as long ago as the time of Lord Holt, that " a bill shall never go in discharge of a precedent debt, except it be part of the contract that it should be so."   (Clark *v.* Mundal, 1 Salk. 124.)   And that where the note of a third person " is given in payment of a precedent debt, it is always taken under this condition to be payment, if the money be paid thereon in a convenient time."   (Ward *v.* Evans, 2 Ld. Raymond, 928.)   And such has been the rule in England ever since. The case of Tobey *v.* Barber, (5 John. 68) is the leading American authority on the point in question, and has been followed, with few exceptions, in the several States.   That was an action upon a covenant in a lease to pay rent.   In defense to a part of the claim, the defendant gave in evidence a receipt of the plaintiff of one hundred and sixty-three dollars, purporting in terms to be in full for the rent for two quarters.   The plaintiff then proved that the note of one Coffin, payable in four months, constituted a portion of the money named in the receipt ; that Coffin failed before the maturity of the note, and took the benefit of the Insolvent Act, and that the note was not paid. The admission of this proof was objected to, but the Supreme Court held the same admissible, and in its opinion said : " The taking of the note was no extinguishment of the debt due for the rent.   It is a rule well settled, and repeatedly recognized in this Court, that taking a note, either of the debtor or of a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take the note as payment, and *to run the risk of its being paid ;* or unless the creditor parts with the note, or is guilty of *laches* in not presenting it for payment in due time.   He is not obliged to sue upon it ; he may return it when dishonored, and resort to his original demand.   It only postpones the time of payment of the old debt until a default be made in the payment of the note.   (1 Salk. 125 ; 5 Term Rep. 513 ; 6 Term Rep. 52 ; 7 Term Rep. 66 ;  1 Esp. N. P. 3 ;  1 Cranch. 181 ; Herring *v.* Sanger, January Term, 1802, and Roget *v.* Merritt and Clapp,

2 Caines, 117.) There is no evidence in this case that the plaintiff agreed to run the risk of the solvency of Coffin, and to take the note as absolute payment, except it be the inference arising from the receipt itself, and that is not enough to establish such a positive agreement."

In Jackson v. Weed, (9 John. 310) the plaintiff sued for goods sold and delivered, for which the note of a third person was taken, and a receipt in full given; and it was left to the jury to determine whether the plaintiff had agreed to receive the note as payment, and to run the risk of its being paid. The jury having found for the plaintiff, the Court refused a new trial, and in its opinion said: "The books all agree that there must be a clear and special agreement that the vendor shall take the paper absolutely as payment, or it will be no payment, if it afterwards turn out to be of no value."

In Olcott v. Rathbone, (5 Wend. 490) the cashier of a bank, on the maturity of a note, accepted a check of a third person for part of the money, and a new note for the balance, and thereupon delivered up the old note, and it was held that on the dishonor of the check, an action would lie upon the original note, to recover the amount of the check, and that the delivering up of the original note, was not evidence that the check and new note were received in payment. See also Hays v. Stone, 7 Hill, 128; Jaffrey v. Cornish, 10 New Hamp. 505; Porter v. Beverly, 10 Peters, 532; Schemertron v. Laines, 7 John. 311; Elwood v. Deifendorf, 5 Barb. 398; Van Eps v. Dillaye, 6 Barb. 244; Maye v. Miller, 1 W. C. C. 328.

The authorities proceed upon the obvious ground that nothing is to be considered as payment in fact, but that which is in truth such, unless something else is expressly agreed to be received in its place. That the mere promise to pay, whether by the original debtor or a third party, cannot of itself be regarded as an effective payment, is manifest. Testing, then, the case at bar by these authorities, the defense fails. The only evidence that the plaintiff received the note of Hale & Vincent for $2,500, in payment, is derived from the account rendered by the defendants, and his own allegation in the complaint. Neither are evidence of an agreement to receive the note in satisfaction of the debt. Neither are inconsistent with the conditional acceptance of the same. They are not more expressive than the receipt in

full in Tobey *v.* Barber and Johnson *v.* Weed, or the surrender of the original note in Olcott *v.* Rathbone.   And all the attendant and subsequent circumstances go to show that the plaintiff never intended to take the note in absolute payment, and assume the risk of its ultimate collection upon himself.   It does not appear that he knew anything of the responsibility of the makers; and it is not reasonable to suppose that he would have released, without any consideration, a claim upon defendants, who were abundantly responsible, for the note of parties of whose means he was wholly ignorant.   The question in any view, was one of fact to be determined by the jury, and their finding is conclusive.   No stress can be placed upon the delay in calling upon the defendants for payment, after the maturity of the note.   They were fully aware of its nonpayment; the note was in their possession for collection, and their obligation to meet the amount did not rest upon any notice, but upon the fact that it was not paid at maturity.

The renewal of the note in part could not alter the original relations of the parties as debtors and creditors, except in the increased extension of the time of payment, until the maturity of the renewed note. The makers were at the time wholly insolvent, and their insolvency was known to the plaintiff.   That the renewed note was taken under these circumstances in satisfaction of the balance, is at least highly improbable.   The evidence disclosed by the record does not establish any agreement to this effect, and the presumptions of the law are against its existence.   The whole arrangement appears to have been made under the supervision, if not by the direct request, of Lent.   It may be that it was the expectation of Lent, that he would be entirely released of responsibility upon the whole demand, by paying his portion.   But if so, he was mistaken in the legal effect of the transaction. A part payment of the demand by one of two debtors, was no consideration for a discharge to him of the balance.   The payment of the entire amount was the obligation of both; the partial payment was but a partial discharge of the existing obligation, and furnished no claim for the relinquishment of any rights for the residue.   (Armstrong *v.* Hayward, 6 Cal. 183.)   To have availed him, the release to Lent should have been a technical one under seal.

The Statute of Limitations does not bar the demand.   It is true,

that the action is for the balance due upon the amount rendered in December, 1854, and were it not for the two notes of Hale & Vincent, the statute would have run against the demand.    These notes operated, however, as an extension of the period of payment, until October, 1856, and the present action was brought in December following.

The case appears to have been tried upon the impression that it was essential to the plaintiff's recovery to make out a misrepresentation by one of the parties as to the solvency of Hale & Vincent, and the consideration of their note, and several of the instructions asked in the Court below, and several of the points made in this Court, are founded upon that impression.    These we do not notice, as from the views we have taken, they are entirely immaterial to the determination of the rights of the parties.

Judgment affirmed.