By the Court,
Robertson, Ch. J.
As no objections were taken on the trial, that whatever contract was established, was different from that set out in the complaint, it is only necessary to determine whether such a contract was made out as would justify the verdict; and to which the pleadings could be made to conform, without changing substantially the claim. {Code, § 173.) The complaint sets out as a cause of action, a sale of oil by the plaintiff, through his agent and brother, (H. W. Stocker,) to the defendant. There was enough evidence in this case to have sustained the finding of the mere employment by the defendant, of Stocker (the brother) as a broker, to buy for him the same kind and quantity of goods; and his purchase' of them under that employment. Possibly there may be so material a difference between the two kinds of contracts of principal and agent and vendor and vendee, in regard to the evidence of them, as well as acts required to be done, to sustain an action, and the rule of damages, as to render it *200 at least doubtful, if a contract of agency only had been proved, whether the complaint could legally be amended to conform to such evidence. It will, however, still be necessary, even if it could, to consider, whether such a contract alone was'proved; and if it were whether the plaintiff was entitled to recover on it the amount of damages given by the jury. It may be questionable, also, whether such a claim would pass by the assignment to the plaintiff. The complaint alleges an assignment of a cause of action growing out of a contract of sale alone; but the parties have not set out any copy of the assignment, in the case, to enable the court to pass on the question. It is very clear, however, on such a contract of agency, even if the claim was duly assigned, the plaintiff could only recover his brother’s commission as broker, unless the latter not only paid the price of the oil, but proved what it was; which was not done on the trial in this case.
As all the witnesses concur in testifying that the negotiation between the defendant and the plaintiff’s brother, (H. W. Stocker,) ended in a definite arrangement of some kind between them, is may be assumed to have done so, when determining the propriety of the refusal of the court on the trial of this action to dismiss the complaint, and the obtaining by the plaintiff of the verdict which he did. The nature of the arrangement thus made is important, not only in ascertaining what the rights of the parties would be under it, if standing alone, but also in shedding its light forward upon the subsequent acts and corrpondence of the parties to it. If it were a contract of sale of merchandise by the plaintiff, it would be invalid by reason of not being in writing ; and the subsequent correspondence would be indispensably necessary to create a valid one of the same kind. That correspondence, without the incorporation in it of facts, established only by extrinsic evidence, will be found not to exhibit on bare inspection of its contents alone, all the necessary elements of a contract, so as to bring it without the statute of frauds. The article professed to be sold, is only described in such correspondence as “ oil” except in the letter of Stocker' (H, W.) of the 25th
*201 November, wherein, he states it to be “ refined oil of standard gravity, and tlst of heat,” without, however, even then specify-the kind of oil. Neither time or place of delivery, nor a price, is fixed in such correspondence ; and even the time of paying that price is left very loosely. Thus Stocker proposes' in the bill he sent on the 24th, and Wednesday the -26th. The defendant forthwith demurs in his first note, to this, declaring the impossibility of his paying it before the 29th or 31st, and thinks as Stocker has set a time for payment, it can no doubt be arranged. To this Stocker replies on the same day by letter, proposing a division of the payment into $5000 on the 26th, and the residue on the 29th. The defendant only rejoins to this on the same day, he will see what he can do, but expressing his disbelief of his ability to do anything before the 29th. Stocker forthwith asks for $5000 on the next day, on account, but only if possible ; and again on the same day asks the defendant to do what he could for him before the 29th ; still if possible. The next day Stocker, after stating he had paid the oil bill, renews his request for what the defendant could give or send on account, and he would expect the residue on the 29th; still only if possible. No further communication seems to have passed between them until the 29th; yet Stocker claims in his first note of that day, that the defendant had set that day for paying the oil bill, and asks for a check at an early hour; but still only if possible. Subsequently, however, on the same day, he notified the defendant, that if he did not pay on that day or Monday (the 21st) following, he (Stocker) would sell the oil and hold the defendant liable for any loss. The defendant wrote Stocker two notes on that day, one saying he thought the oil had been sold, expressing his hope to place the lot that day, and asking Stocker if he could not get off “ this lot.” This constitutes all that is to be found in the correspondence about payments, except in the two letters of the defendant on the 26th and 29th of November, wherein he promises to give Stocker a check from a Mr. Smith, but neither its amount, nor on what account it is to be given is stated. No certain time of payment, capable of being en *202 forced in case of non-payment at the day, can be said to be definitely arranged by such statements ; the nearest approach to definiteness, to be inferred therefrom, is, that the payment was to be made, if at all, on the 29 th or earlier, if the plaintiff could, which Stocker extended to the 31st; having himself in the meantime, as stated by him, actually paid the price. There can be no contract of sale of merchandize, which is deficient in a description of the article, its price, time of delivery, and of payment, if not forthwith to be delivered or paid for.
Without reference to the bill, and sold note, sent by Stocker (the plaintiff’s brother) to the defendant there is nothing, therefore in writing, in the evidence by which ‘whatever is indeterminate in the correspondence in regard to the terms of any contract of sale between the parties cp-n be made certain ; and it is definitively settled in this state that no oral understanding can, under the statute of frauds, be incorporated in a written agreement. (Wright v. Weeks, 25 N. Y. Rep. 153. S. C. 3 Bosw. 372.) The terms, however, of both such bill and note,are rendered so ambiguous by the addition of the term “ agent ” to the name of Stocker, (H. W.) .as to make the description of contract referred to in it, consistent with the latter’s action as agent for his brother, if he were acting for him, and broker for the defendant or both parties. As broker for two parties, he was bound to enter in his own books the contract signed by him, to bind them both, or deliver to each a note of it, as of purchase or sale as the case might be. By the delivery of the sold note he only bound the seller and not the defendant. (Roget v. Merritt, 2 Caines, 117. Waring v. Mason, 18 Wend. 425. Merritt v. Clason, 12 John. 102. Worrall v. Munn, 5 N. Y. Rep. 229. Fenly v. Stewart, 5 Sandf. 101. Bailey v. Ogden, 3 John. 399.) If the retention of that sold note was to have any effect upon the defendant’s rights, I apprehend he had a right to show the nature of the arrangement of the 18th November, to explain under what apprehension he' received and retained it. Possibly the subsequent corrrespondence might have adopted such sold note by referring to it as the basis of a contract different from that of the 18th of No *203 vember, and. thus rendered the latter immaterial. But if the. language of such correspondence was equivocal, it was as admissible as any other extrinsic fact to explain it. It may be remarked that nothing is said in such correspondence of any other seller than the Genesee Oil Co., from whom Stocker says in his letter of 29th November, he bought it in his own name, by whom as he stated in his letter of the 25th, no one else was known as purchaser,, the oil being delivered, as he subsequently declared, by them to the defendant as sold by him, and the price paid by him to them.
If it be assumed that the sold note and bill are to be imported into the written contract supposed to be made out by the correspondence, subject to their explanation by the result of the previous negotiation of the 18th of November, the testimony of their witnesses, two besides the defendant (Smith and Spearpoint) against that of Stocker (H. W.) makes such contract to have been a mere employment by the defendant of Stocker as his broker or agent to buy for him. Except in one note of Stocker’s of November 26th, there is nothing in the correspondence on the part of the defendant which does not corroborate that view, and nothing on the part of Stocker adverse to it. The defendant’s letters treat the terms and even obligation of the contract as unsettled, until undeceived by being informed by Stocker that he (Stocker) had bought the oil and was liable for its price. He was not informed in it óf any principal as vendor, except the Genesee Oil Co., or of any purchase except from them. The note of Stocker of the 26th, just alluded to, which is directed to correcting some misapprehension by the defendant of the representation of the character or kind of oil spoken of, and also to the fact of the delivery of oil corresponding with that sold, is the only one which speaks of a sale by Stocker, and in it he mentions his purchase of it from the Genesee Oil Co. It is true, he therein speaks of his having sold it to the defendant. But that could only be understood of a sale on his own account or of the company mentioned, or else of his acting as a broker. A careful examination of the whole correspondence seems to me to show its tenor *204 and. spirit to have heen confidential and communicative as by a principal to a trusted agent, and that it was not wary and exact in making propositions for a contract between principals. The jury may, however, have thought otherwise and preferred to take the version of Stocker (H. W.) of the transaction of the 18th of November, so as to render its effect on the correspondence immaterial.
It is hardly possible to make the position of Stocker (H. W.) in this transaction that of a broker or mutual disinterested agent of the parties to this action. Before his brother owned any oil, and by virtue of a general employment, he sold it on his behalf to the defendant; without any new instruction from his brother he bought it on his account, (Glentworth v. Luther, 21 Barb. 145. Coleman v. Garrigues, 18 id. 60.) It does not seem compatible with the duties of a mutual agent, to purchase goods of one of his principals for himself as his agent for the other, before the former owns them, and then to buy them of a third person to enable the vendor to complete his contract. He was not authorized to buy any particular merchandize, but only oil of a certain,kind.
Assuming, however, the sold note and bill to have been the only commencement of the negotiation for a written contract, the question is presented whether from their receipt by the defendant, followed by the correspondence which took place between the parties, a contract in writing can be made.out to satisfy the provisions of the statute of frauds. I have already adverted to the entire destitution of such correspondence of the proper terms of a contract, without the aid of such bill and note. The first rule applicable to the importation of a written document, whether subscribed or. not, into a writing or correspondence duly subscribed so as to charge the parties, is that. the reference to it in such correspondence or writing must be. clear of all doubt. (Tyssan v. Kilton, 3 Com. L. Rep. 705. Parkhurst v. Van Cortlandt, 14 John. 15. Kenworthy v. Scofield, 2 Barn. & Cr. 954. Blackburne on Sales, 49, and cases cited. Wright v. Weeks, ubi sup.) No amount of verbal evidence, however apparently conclusive, can therefore *205 so engraft one written document on another as to constitute one contract in writing subscribed by the parties, within the provisions of the statute of frauds, unless there be such a description of the-document referred to in that referring to it, as to enable the court by their simple inspection to determine that the former was intended by the latter. The moment recourse is had to verbal evidence to determine what was the document referred to, the entire contract ceases .to be evidenced by writing. In this case the proof may have been very satisfactory, that there was only one dealing between the parties and only one bill rendered. Still that does not exclude the possibility of another having been intended by the only legitimate statutory evidence, which is writing. If there had been even any oral contradictory testimony on that point, it must have been submitted to the jury, and the existence and obligation of a contract would have depended upon a fact not appearing upon the face of a writing, upon which a court alone would have a right to pass, but passed upon by a jury.
In this case, the only adoption of any bill rendered into any contract created by the correspondence, is by the reference to one, in the first two notes passing between the parties on the 24th of November, and two of Stocker's on the 29th. In the first of the former, the defendant says : “ On hills rendered you say, cash on. Wednesday, the 26th, and Stocker (H. W.) in his reply speaks of the payment of the hill rendered on Saturday.” In the other two written by him he speaks of “my bill sent you,” and “ paying the oil bill.” From the rest of the correspondence it is only to be gathered that “ two hundred and fifty barrels,” containing an undefined quantity of some kind of refined oil of a standard gravity and test of heat,” bought by Stocker of “the Genesee Oil Co.,” in his “own name,” and paid for by him, they knowing him alone, and not the defendant in the transaction, which they delivered to the plaintiff by delivering it to Stocker, had been sold by the latter as a broker, to the defendant,” for some price, to be paid on the 29th of November, or earlier if possible. No mention is made any where in the correspondence of the sold *206 note. There is, therefore, no such reference in the correspondence to the bill rendered as td make its terms part thereof, and the terms of any contract, so far as they are in writing, are still left indefinite.
I think the motion to dismiss the complaint should have been granted. The judgment should, therefore, be reversed, and a new trial had, with costs to abide the event, and the plaintiff permitted to apply to the court to amend his complaint.